Jonathan A. Dessaules, State Bar No. 019439
Ashley C. Hill, State Bar No. 032483
**DESSAULES LAW GROUP**
5353 North 16th Street, Suite 110
Phoenix, Arizona 85016
602.274.5400 tel.
602.274.5401 fax
jdessaules@dessauleslaw.com
ahill@dessauleslaw.com

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| Kacie Kliebert,<br><br>         Plaintiff,<br><br>    vs.<br><br>Brentwood Park Condominium Association Inc.,<br><br>         Defendant. | No. _____<br><br>**COMPLAINT** |

Plaintiff Kacie Kliebert alleges the following:

**PARTIES AND JURISDICTION**

1. Wayne B. Warrington, III ("Warrington") and Kacie Kliebert ("Kliebert") are a married couple who reside in Maricopa County, Arizona.

2. Brentwood Park Condominium Association Inc. ("Brentwood") is an Arizona nonprofit corporation with its principal place of business in Phoenix, Arizona.

3. This action arises, in part, under the Fair Housing Act, 42 U.S.C. §§ 3601, *et seq.*, and, therefore, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331. The Court has supplemental jurisdiction over Kliebert's state law claims under 28 U.S.C. § 1367.

4. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b)(1) and (2).

**GENERAL ALLEGATIONS**

5. Warrington owns a unit in the Brentwood Condominiums.

6. Brentwood is the association that manages the Brentwood Park Condominiums

7. Brentwood asserts that all unit owners are subject to a restrictive covenant prohibiting them from owning dogs (the "Anti-Dog Restriction").

8. Warrington lives in the Brentwood unit with Kliebert and their three kids, including her son/his stepson (the "Child").

9. The Child is a ten (10) year old male who suffers from various disabilities.

10. Kliebert shares custody with the Child's biological father such that the Child lives with Warrington and Kliebert approximately half of the time and with his biological father the other half of the time.

11. The Child's biological father has an extensive history of physically abusing the Child, and others, that has resulted in Child suffering from severe mental and emotional disabilities and requiring professional care and treatment.

12. In or about February 2019, Child was hospitalized twice for psychiatric care, followed by extensive therapy, upon his return to Kliebert and Warrington's home from his biological father's house.

13. The Child's biological father blocked the Child's ability to receive the "extensive therapy" until Kliebert obtained a court order.

14. The Child's professional caregivers recommended an emotional support dog to aid and assist the Child in dealing with the trauma he has suffered and regularly transitioning back to Warrington and Kliebert's home from his biological father's home, and to provide a form of therapy that the biological father could not circumvent.

15. Based on the advice and recommendations from Child's professional caregivers, Kliebert and Warrington requested an accommodation from Brentwood allowing them to have a support dog, as prescribed by the Child's doctor, notwithstanding the Anti-Dog Restriction.

16. After Kliebert and Warrington furnished a note from Child's pediatrician, which stated that the Child "has anxiety and would greatly benefit from the use of a support animal," Brentwood gave verbal approval of the disability accommodation. At or around the time, Brentwood also informed Kliebert and Warrington that they had the only legally-approved dog in the complex.

17. After receiving Brentwood's approval to obtain a support dog, notwithstanding the prohibition against dogs in the Fourth Declaration, and spending substantial time finding a suitable animal, Warrington and Kliebert obtained a support dog, Luna, to serve as the Child's support animal in March 2019.

18. Luna has lived with Warrington and Kliebert and Child since March 2019. During that time, several members of the board visited their unit, observed Luna, and were personally aware of the emotional support nature of the animal. The board members were also personally aware that Child lived part of the time with his biological father and that Luna did not accompany the Child.

19. The Child has responded phenomenally to Luna, which has proved very beneficial to helping the Child cope with the stress and anxiety of seeing his biological father. When the Child returns home from visits with his father, he generally curls up on the dog for several hours at a time and seemingly offloads his stress and anxiety on the dog.

20. Warrington and Kliebert reasonably believe, after extensively watching their son interact with Luna upon his return from his biological father's home, that Luna has had a substantial therapeutic effect on him and has directly prevented him from having to be hospitalized again.

21. Specifically, according to the Child's doctor, Luna aids the Child by:

calming him during periods of emotional dysregulation, provides an outlet to prevent behavioral outburst, provides calming pressure and physical contact when he is feeling disconnected, and aids him in maintaining focus. From a physician's perspective, there has been a decrease in both the frequency and severity of the effects of his disability since the emotional support animal has been in the family's home.

22. Kliebert would rather the Child not suffer from anxiety and stress related to his visits with his father in favor of having Luna.

23. In the year that has followed since Luna has been acquired, the Child has become deeply attached to the service animal and it continues to provide vital emotional support to him when he returns home from parenting time with his biological father.

24. The support dog does not travel with the Child to his father's house because of his father's history of physical abuse and because the dog helps the child readjust after visits with his father.

25. Warrington and Kliebert have been very open with the board members regarding the abuse the Child has experienced and experiences with his biological father, the effects of the same, and the benefit from the emotional support animal. As such, these facts are no secret to members of Brentwood, including the President of Brentwood's board of directors and other board members.

26. Brentwood did not complain or raise any issue concerning Luna until March 2020.

27. On March 6, 2020, Brentwood informed Warrington via email that they had to provide an "2020 updated prescription for the emotional support dog" and that an "annual updated prescription" was "necessary for the dog to remain on property."

28. On April 15, 2020, Warrington and Kliebert forwarded an updated prescription from the Child's doctor to Brentwood which stated that, "[the Child] is a patient at our practice. He currently has an emotional support dog for his anxiety. It is my medical recommendation that he continue to have this dog."

4

29. Warrington and Kliebert reasonably assumed that the prescription from the Child's doctor would be sufficient because it was all that had been requested in 2019 when Brentwood had originally approved, without conditions, the accommodation and, in fact, was more detailed than the original prescription.

30. Warrington and Kliebert require the assistance of an emotional support dog in order to use and enjoy their unit in the same manner as other owners. If denied the reasonable accommodation, they would be subject to the Anti-Dog Restriction and be forced to sell their home and move whereas other owners who do not have disabilities would not be forced to sell their home and move.

31. On April 21, 2020, Brentwood informed Warrington, through its attorney, that it "rejects" Warrington and Kliebert's request because: (i) "pets are not allowed at Brentwood Park, (ii) you have not established that [the Child] is entitled to a reasonable accommodation under the Fair Housing Act," and (iii) the request is "unreasonable, as the dog remains at Brentwood Park full time even though [the Child] is only there every other week."

32. On or around May 14, 2020, Kliebert had a telephone call with Brentwood's attorney, during which time Brentwood informed Kliebert and Warrington that it would not be taking further action at that time.

33. Nevertheless, on or around May 26, 2020, Brentwood's attorney informed Warrington and Kliebert that Brentwood would be forcing Warrington to defend a lawsuit "as to the reasonableness of your request" because:

- The doctor's 2020 prescription, stating that the Child was under her care and "currently has an emotional support dog for his anxiety, "does not establish that [the Child] has a disability and does not explain how the emotional support animal would alleviate the effects of that disability."
- Brentwood "questions the legitimacy of the request [for an accommodation] based on the fact the dog stays at Brentwood Park even when [the Child] is not there."

5

- Brentwood "believes the dog is [Warrington's] pet" and "not an emotional support animal for your son."

34. Brentwood's attorney also offered his own medical opinion, despite not having a medical degree or having any qualifications for doing so, callously informing Warrington that "*if [the Child] needs an emotional support animal, he should have it with him*." Upon information and belief, Brentwood is not qualified to opine on Child's medical requirements or how, when, or why the dog treats his disability.

35. Although Brentwood's attorney stated that Brentwood "will take no further enforcement action at this time," it nevertheless filed a lawsuit in Maricopa County Superior Court and, therefore, is requiring Kliebert and Warrington to hire an attorney, defend the action, and air private, personal details of their lives in public court records solely in order to continue living in the community.

36. The nonenforcement of the restrictive covenant prohibiting dogs with respect to Warrington and Kliebert's unit does not impose any burden or hardship on Brentwood.

37. Upon information and belief, Brentwood's President has been substantially and materially behind the decision to file this lawsuit. She has avoided conducting any board meetings or taking any board votes to authorize the action and, instead, has acted unilaterally without board or community authorization.

38. Brentwood's President of the Board of Directors has made statements to several people, including Warrington, that they do not want minor children living in the community and that it is not a community suitable for children. Upon information and belief, Brentwood changed its position concerning the 2019 approval of the emotional support animal and decided to file the lawsuit, in part, to drive Warrington and Kliebert out of the community.

**COUNT ONE**
**(Violation of the Federal Fair Housing Act)**

39. Kliebert incorporates the foregoing allegations as if fully set forth herein.

6

40. The Fair Housing Act, as amended, imposes affirmative duties on homeowner associations to make reasonable accommodations in rules, policies, practices or services when necessary to afford disabled individuals an equal opportunity to the use and enjoyment of a dwelling.

41. The failure to perform these affirmative duties under the Fair Housing Act constitutes an act of discrimination.

42. To prevail on a claim under 42 U.S.C. § 3604(f)(3), a plaintiff must prove all of the following elements: (1) that the plaintiff or his associate is handicapped within the meaning of 42 U.S.C. § 3602(h); (2) that the defendant knew or should reasonably be expected to know of the handicap; (3) that accommodation of the handicap may be necessary to afford the handicapped person an equal opportunity to use and enjoy the dwelling; (4) that the accommodation is reasonable; and (5) that defendant refused to make the requested accommodation.

43. 42 U.S.C. § 3602(h) defines a "handicap" to mean (1) a physical or mental impairment which substantially limits one or more of such person's major life activities; (2) a record of having such an impairment; or (3) being regarded as having such an impairment.

44. The Child is an associate of Kliebert and his anxiety constitutes a handicap within the meaning of 42 U.S.C. § 3602(h).

45. Brentwood has known about the handicap since February 2019 when it granted a disability accommodation approval to allow Kliebert and Warrington to acquire a support animal of the Child.

46. Members of Brentwood's board of directors are aware of details of the Child's condition and the need for the accommodation otherwise set forth in this Complaint.

47. Section 7.5 of the Declaration provides that "[n]o animals of any kind shall be raised, bred or kept in any unit or any portion of the property… No dogs will be allowed regardless of size, kind or breed, whether on a temporary or permanent basis."

48. In 2019, Brentwood accommodated the Child's handicap by allowing an animal to be kept at the property as a support dog, satisfied that the request was reasonable based solely on the Child's doctor's note which provided that the Child "has anxiety and would greatly benefit from the use of a support animal."

49. Kliebert and Warrington obtained the support animal for Child only after obtaining approval from Brentwood. The support animal has proved beneficial in helping treat the Child's handicap. The Child has grown dependent on the support animal to treat his handicap such that Warrington and Kliebert will be forced to relocate from the Property if Brentwood continues to refuse to make the requested accommodations.

50. In 2020, Brentwood requested an updated prescription, which Kliebert and Warrington provided. The 2020 prescription provided more detail than the 2019 prescription which was deemed adequate to warrant the accommodation that year.

51. The accommodation is reasonable. Brentwood approved the accommodation for a year without issue, there have been no complaints from the neighbors about the support animal, and the owners of at least 18 of the 32 total units in the Brentwood Condominiums have provided written support for the continued accommodation. Kliebert is not aware of any objections to the support animal except from the one or more members of the Brentwood Condominium board of directors who initiated the Maricopa County Superior Court action against Warrington.

52. Brentwood has refused to make the requested accommodation when it rescinded its prior approval and filed its lawsuit.

53. Brentwood refused to make the requested accommodation when it alleged in Paragraph 17 of its Complaint that it "disputes the reasonableness of defendant's requested accommodation."

54. Brentwood refused to make the requested accommodation when it alleged in Paragraph 18 of its Complaint that it "disputes that the dog is actually an emotional support animal."

55. Brentwood refused to make the requested accommodation when it sued Warrington for what amounts to a contrived action seeking injunctive relief, under the guise of declaratory action, the results of which will determine the position that Brentwood will take with respect to the accommodation, and asked the Court to make Warrington pay Brentwood's attorneys' fees if the Court determines that Warrington is not entitled to the requested accommodation, that Brentwood approved the year prior before the service animal was obtained and introduced to the Child.

56. The President of Brentwood's board of directors has made comments to people in the community that children should not be allowed to live in the condominium community.

57. Upon information and belief, the President of Brentwood's board of directors, acting without the authority of Brentwood's board of directors, has unilaterally refused to make the requested accommodation because she does not believe that children should be allowed to live in the condominium complex and should not be accommodated.

58. Kliebert has suffered damages as a direct and proximate result of Brentwood's actions.

59. Pursuant to 42 U.S.C. § 3613(c)(1), Kliebert is entitled to her actual and punitive damages, and as the Court deems appropriate, any permanent injunction or other order.

60. Pursuant to 42 U.S.C. § 3613(c)(2), Kliebert is entitled to her reasonable attorneys' fees and costs.

**COUNT TWO**
**(Violation of Arizona Fair Housing Act)**

61. Kliebert incorporates the foregoing allegation as if set forth fully therein.

62. The above allegations constitute a violation of A.R.S. § 41-1491.19(B).

63. Kliebert is entitled to actual and punitive damages.

64. Kliebert is also entitled to her reasonable attorneys' fees and court costs pursuant to A.R.S. § 41-1491.33 and A.R.S. § 41-1491.36.

65. Kliebert is entitled to injunctive relief enjoining Brentwood from engaging in the discriminatory practices alleged herein.

WHEREFORE, Kliebert requests judgment as follows:

(A) Awarding judgment in Kliebert's favor and against Brentwood;

(B) The issuance of a writ of injunction against Brentwood prohibiting it from engaging in further invalid actions and preventing it from further refusing to grant reasonable accommodations related to the Child;

(C) Awarding Kliebert her actual damages and punitive damages in amounts to be proven at trial;

(D) Awarding Kliebert her attorneys' fees and costs pursuant to 42 U.S.C. § 3613(c)(2), A.R.S. § 41-1491.33, and A.R.S. § 41-1491.36; and

(E) Such further relief as the Court deems appropriate.

DATED this 13th day of July 2020.

DESSAULES LAW GROUP

By: /s/ Jonathan A. Dessaules
Jonathan A. Dessaules
Ashley C. Hill
*Attorneys for Plaintiffs*